In re Vincent **SALAMONE** and Maureen Salamone, Debtors.

Vincent **SALAMONE** and Maureen Salamone, Plaintiffs,

v.

BANK OF COMMERCE, European American Bank, Household Finance Corporation, Diners Club, Inc., Defendants.

Bankruptcy No. 880–01751–20.
Adv. No. 883–0646–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 24, 1984.

Holland & Zinker, Smithtown, N.Y., for Household Finance Corp.; Richard L. Stern, Smithtown, N.Y., of counsel.

Rosenberg & Borack by Mark Rosenberg, Patchogue, N.Y., for debtors.

Mullen & Iannarone, P.C. by Liberatore J. Iannarone, Centereach, N.Y., for European American Bank.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

This is an adversary proceeding commenced by the debtors on July 26, 1983, seeking avoidance of several judgment liens. The relief requested was granted upon default as to the defendant Diners Club, Inc. The complaint was dismissed as to the defendant Bank of Commerce because its lien arose prior to the enactment of 11 U.S.C. § 522(f). *See U.S. v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235, 9 B.C.D. 1071 (1982) (Section 522 not intended to be applied retroactively to destroy property rights predating enactment of the Bankruptcy Code.). A hearing was held on April 10, 1984 to consider whether the debtors' exemptions were impaired by the judgment liens of the remaining defendants European American Bank and Household Finance Corp.

At the hearing, the parties stipulated as to the material facts. The debtors filed their chapter 13 petition on April 11, 1980, and their plan was confirmed on June 18, 1980. On both these dates the value in the debtors' home over and above their mortgage obligation was not sufficient to satisfy both the debtors' homestead exemption and the creditors' liens. Almost three years later, on April 28, 1983, the debtors' chapter 13 case was converted to one under chapter 7 due to the debtors' defaults in making monthly plan payments. Shortly thereafter, on July 26, 1983, the debtors commenced this adversary proceeding. On these latter two dates, the value of the home above the debtors' mortgage increased to an amount sufficient to satisfy the exemptions and the liens.

The case raises two important and novel issues, namely: (1) what is the appropriate date at which to measure the value of

property of the estate for purposes of lien avoidance under section 522(f) of the bankruptcy code in a chapter 13 case, and (2) how is the answer to the first issue affected by a conversion of the chapter 13 case to a chapter 7 case. The parties agree that should the date of filing or confirmation of the plan control, the debtors would be entitled to avoid the subject liens, and should the date of conversion or commencement of the lien avoidance proceeding control, the debtors would not be entitled to relief.

## THE QUESTION OF VALUE IN A § 522(f) PROCEEDING

11 U.S.C. § 522(f) permits the avoidance of certain liens on an interest of the debtor in property to the extent that the lien impairs a debtor's exemption. In the instant case, the debtors claimed as exempt the equity in their homestead pursuant to 11 U.S.C. § 522(d)(1), which permits a debtor to exempt his "aggregate interest, not to exceed $7,500 in value, in real property ... that the debtor uses as a residence...."

In order to determine whether a lien impairs a debtor's exemption, the court must determine the value of the debtor's equity [1] existing in the property as of some point in time. A debtor's homestead exemption would only be impaired by a lien to the extent there was insufficient equity to cover both the debtor's exemption and the lien. *See Henry v. Chase Manhattan Bank*, 38 B.R. 971, 974 (Bankr.E.D.N.Y. 1984). The question that arises is at what point in time should the value of the debtor's property, and consequently his equity, be measured. A debtor would ordinarily favor as early a time as possible, given that home values normally increase over time and mortgage balances decrease as periodic payments are made. As the debtor's equity increases, a greater amount is available both to allow the debtor to enjoy his exemption and to satisfy creditors' liens.

The extent of impairment of the debtor's exemption is thereby reduced, negatively impacting on the debtor's ability to avoid the liens.

In broad terms, the first question before the court is should, in a chapter 13 case, the creditors or the debtor benefit by the increases in the value of the debtor's property and the decreases in the mortgage payments due thereon; i.e., should post-petition increases in the debtor's equity inure to the debtor or to lienholders?

## ANALYSIS

■ It is well-settled that in a chapter 7 case originally filed as such, the appropriate time focus for valuation of the debtor's equity for purposes of a section 522(f) lien avoidance proceeding is the date on which the petition was filed. *In re Dvoroznak*, 38 B.R. 178, 182 (Bankr.E.D.N.Y.1984) (citing *In re Tarrant*, 19 B.R. 360, 9 B.C.D. 413 (Bankr.D.Ala.1982); *In re Walters*, 14 B.R. 92, 8 B.C.D. 190 (Bankr.S.D.W.Va. 1981); *In re Pitre*, 11 B.R. 777 (Bankr.N.D. Ill.1981); *In re Crump*, 2 B.R. 222, 5 B.C.D. 1235 (Bankr.S.D.Fla.1980). In *Dvoroznak*, the court noted that in a chapter 7 case exemptions are taken on the date of filing and generally only the property of the debtor as of the date of filing is included in the debtor's estate.[2] The court reasoned that since the creditors' and the debtors' rights in estate property were fixed upon filing, the value of the estate property for lien avoidance purposes should likewise be fixed at that point. 38 B.R. at 181–82. In addition, the court considered the statutory purpose of furthering the debtor's fresh start behind 11 U.S.C. § 522, and reasoned therefrom that Congress did not intend to allow lien creditors to receive the benefit of equity accruing post-petition in exempt property. *Id.* at 182; *see Tarrant*, 19 B.R. at 366, 9 B.C.D. at 417.

---

**1.** "Equity", as used in this sense, means the value of the debtor's homestead over and above mortgages and other encumbrances unavoidable under § 522(f). *Cf.* Black's Law Dictionary 634 (rev. 4th ed. 1968) ("the remaining interest belonging to one who has pledged or mortgaged his property....").

**2.** Some limited types of property acquired within 180 days after filing are included in the estate. *See* 11 U.S.C. § 541(a)(5) (*e.g.* life insurance proceeds).

The analysis applicable to a chapter 7 case is simply not applicable to a chapter 13 case. Several of the premises upon which the holdings in *Dvoroznak* and *Tarrant* were based are not valid in a chapter 13 case. First, in a chapter 13 case, the filing of the petition does not create a fixed estate, but rather the debtor's estate includes post-petition property acquired by the debtor. 11 U.S.C. § 1306. Second, whereas a chapter 7 proceeding contemplates expeditious collection of estate property and distribution thereof to creditors, *see* 11 U.S.C. § 704(1), a chapter 13 case contemplates that the debtor remain in possession of all of his property, *see* 11 U.S.C. § 1306(b), and that a plan be implemented to enable the debtor to pay creditors over time. *See* 11 U.S.C. § 1321 *et seq.* Furthermore, since debtors in chapter 13 cases remain in possession of their property, the purpose behind taking exemptions therein is not the same as the purpose behind taking exemptions in a chapter 7 case. In chapter 7 cases, the purpose for claiming property as exempt, is to permit the debtor to remain in possession of certain property essential to the debtor's "fresh start". Chapter 13 debtors, however, usually remain in possession of all of their property.[3]

In order to determine the appropriate time at which to value a debtor's equity in his property for purposes of section 522(f) lien avoidance in a chapter 13 case, the court must consider the purpose for claiming exemptions and avoiding liens in chapter 13 cases,[4] as well as the time frame in which creditors' and debtors' rights are fixed in chapter 13 estate property.

■ Property is claimed as exempt in chapter 13 cases in order to permit the court to determine whether the creditors would receive under the plan at least as much as they would receive in a chapter 7 liquidation, and in order to permit creditors to determine whether the chapter 13 plan should be opposed. *Armstrong v. Lindberg*, 735 F.2d 1087, 10 C.B.C.2d 1255, 1258 (8th Cir.1984).

The chapter 13 debtor is required to make payments to each unsecured creditor over the life of the plan the present value of which are at least equal to the amount that the unsecured creditor would have received under a hypothetical chapter 7 liquidation on the effective date of the plan.[5] To determine such an amount, the chapter 13 debtor must first ascertain the value of his property less any exemptions to which he would be entitled under a chapter 7 liquidation. The result would be the value of property to be distributed to unsecured creditors under a hypothetical liquidation.

**3.** 11 U.S.C. § 1306(b) provides that the debtor shall remain in possession of all property of the estate, except as provided in a confirmed plan or order confirming a plan.

**4.** A minority of bankruptcy courts have held that chapter 13 debtors are not entitled to claim exemptions at all, reasoning that (1) section 522(f) directly conflicts with section 1325(a)(5)(B)(i)'s requirement that a chapter 13 plan can only be confirmed if it provides for the retention of liens held by secured creditors; and (2) whereas chapter 7 debtors surrender all nonexempt property to the trustee, chapter 13 debtors retain possession of all their property, thereby negating the need to declare exemptions, and negating any benefit that would normally accrue from lien avoidance. *See generally* McLaughlin, *Lien Avoidance by Debtors in Chapter 13 of the Bankruptcy Reform Act of 1978,* 58 Am.Bankr.L.J. 45, 50–55 (1984) (*citing Baldwin v. Avco Financial Services,* 22 B.R. 507 (Bankr. D.Del.1982); and *In re Sands,* 15 B.R. 563 (Bankr.M.D.N.C.1981)).

The response to the first contention of this minority view is that if a creditor's lien is avoided by virtue of section 522(f), the "allowed secured claim" which is the subject of section 1325(a)(5)(B) would no longer exist, and the debtor would have no obligation with respect thereto. *See Slykerman v. Associates Financial Services and Credithrift of America,* 29 B.R. 82, 84, 10 B.C.D. 1033, 1034–35 (Bankr.E.D.Mich. 1983) (*In re Slykerman*). As to the second contention, this court adheres to the majority view that exemptions serve an important economic benefit upon debtors in chapter 13 cases. Such benefit is discussed in the text *infra.*

**5.** 11 U.S.C. § 1325(a)(4). The debtor's plan shall be confirmed if, *inter alia:*

the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date. . . .

Second, the chapter 13 debtor must ascertain the amount that each unsecured creditor would receive under a hypothetical distribution. To do this, the debtor must first ascertain the total amount of all unsecured claims, including the unsecured claims held by holders of avoidable liens. Thus the chapter 13 debtor must at least hypothetically avoid the liens that could be avoided under a chapter 7 liquidation.

If the debtor were not permitted to *actually* avoid the liens that could be avoided in a chapter 7 case, the determination made under section 1325(a)(4) would be rendered a nullity. Under only a hypothetical avoidance, the debtor's minimum repayment terms required by section 1325(a)(4) would include the amount to be paid the holder of the avoided lien as an unsecured creditor, and in addition the debtor would be required to pay the lien holder, as a secured creditor, the balance of his entire claim. *See* 11 U.S.C. § 1325(a)(5)(B). If the lien is not actually avoided, the debtor is forced to pay a greater amount to unsecured creditors than he would be required to pay under a chapter 7 liquidation. Such a result conflicts with the minimum repayment requirement in section 1325(a)(4), and Congress's intent to afford the chapter 13 debtor the same fresh start as the chapter 7 debtor. *See Baldwin v. Avco Financial Services,* 22 B.R. 507, 509–10, 9 B.C.D. 719, 721 (D.Del.1982).

11 U.S.C. § 1325(a)(4) expressly states that the hypothetical chapter 7 liquidation takes place "as of the effective date of the plan." As noted above, exemptions are taken and liens avoided in chapter 13 cases in order to determine the amount that unsecured creditors would receive under a hypothetical chapter 7 liquidation as of the effective date of the plan. Thus, the most logical time to value the equity in the debtor's homestead for section 522(f) lien avoidance should be the time at which such equity would be valued if the case were a chapter 7 case as of the effective date of the plan. Since the chapter 7 valuation date is the date of filing, *see Dvoroznak,*

*supra,* the chapter 13 valuation date should be the effective date of the chapter 13 plan.

The court holds therefore, that in a chapter 13 case, a debtor's equity in his homestead should be valued for purposes of section 522(f) lien avoidance as of the effective date of the debtor's chapter 13 plan, which is generally the date on which the order of confirmation becomes final. *See* 5 *Collier on Bankruptcy* ¶ 1325.-01(2)(D)(b)(i) at 1325–10 (15th ed. 1982).

An analysis of when debtors' and creditors' rights are fixed in chapter 13 estate property provides an alternate basis for the court's holding. In a chapter 7 case, property acquired by a debtor after filing does not become property of the estate and therefore does not inure to the benefit of creditors. Thus, as mentioned above, one justification for the *Dvoroznak* holding was that since post-petition property belongs to the debtor, post-petition accretions in the value of his equity should also accrue to the debtor. In chapter 13 cases, however, property acquired by the debtor post-petition continues to become estate property until confirmation of the debtor's plan, at which time all estate property vests in the debtor. 11 U.S.C. § 1327(b). Therefore, in a chapter 13 case, accretions in value of the debtor's equity become property of the estate until confirmation of the debtor's plan. At confirmation, the debtor's and creditor's rights first become fixed in estate property. It is on this date that the debtor's property should be valued for purposes of section 522 lien avoidance.

## HOW DOES CONVERSION OF THE DEBTORS' CHAPTER 13 CASE AFFECT THE VALUATION OF THEIR EQUITY?

Had the debtors' case herein remained one under chapter 13, the court would have had no difficulty allowing the debtors to avoid the liens under the stipulated facts. The debtors, however, converted their case to one under chapter 7 on April 28, 1983, a date on which the debtors' equity in their home was greater than the total amount of

their exemption and the liens subject to this avoidance proceeding.

We have seen that in a chapter 7 case, rights in estate property are generally fixed upon filing. We have also seen in a chapter 13 case, that liens are avoided as in a hypothetical liquidation upon confirmation and that rights in estate property generally become fixed upon confirmation. The court's analysis will now focus on how a conversion of a case from a chapter 13 to a chapter 7 affect rights fixed upon confirmation of the chapter 13 plan. The question for the court is whether conversion of the confirmed chapter 13 case to one under chapter 7 should cause post-confirmation accretions in the value of the debtor's equity to inure to the creditors instead of the debtor. The answer to this question rests upon a determination of whether pre-conversion property becomes property of the newly created chapter 7 estate upon conversion.

11 U.S.C. § 1306(a) suggests that all property in which the debtor had an interest prior to conversion of his chapter 13 case is included in the newly created chapter 7 case:

> Property of the [chapter 13] estate includes ... all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is ... converted to a case under chapter 7....

The analysis cannot cease there, however, because as discussed above, 11 U.S.C. § 1327(b) provides that upon confirmation, all property of the estate vests in the debtor. The apparent tension between the section providing that estate property includes all property acquired by the debtor prior to conversion, and the section stating that confirmation of the debtor's plan vests all estate property in the debtor has been reconciled by the courts in favor of including all pre-conversion property in the newly created chapter 7 estate. *Armstrong v. Lindberg*, 735 F.2d 1087, 10 C.B.C.2d 1255, 1259 (8th Cir.1984) (citing *In re Tracy*, 28 B.R. 189, 10 B.C.D. 541 (Bankr.D.Me.1983);

*In re Stinson*, 27 B.R. 18, 10 B.C.D. 354, 8 C.B.C.2d 16 (Bankr.D.Or.1982); *In re Richardson*, 20 B.R. 490, 9 B.C.D. 197 (Bankr. W.D.N.Y.1982)). *See also In re Wanderlich*, 36 B.R. 710, 714–15, 11 B.C.D. 467, 469 (Bankr.W.D.N.Y.1984); *but see In re Hannan*, 24 B.R. 691, 9 B.C.D. 1151 (Bankr.E.D.N.Y.1982). The courts have reached this result based upon the absurd and potentially abusive result of reaching the opposite conclusion:

> If the court were to conclude otherwise a debtor with substantial assets which would not be exempt in a chapter 7 case, could file a petition under chapter 13, obtain confirmation of a plan based solely upon payments to the trustee from future earnings, be revested with title to all of the non exempt property, convert his case to chapter 7, retain all of the non exempt property and obtain a discharge of not only those debts in existence at the time of the chapter 13 petition but also those incurred thereafter and prior to the conversion.

*See, e.g., Stinson*, 27 B.R. at 20, 10 B.C.D. at 355, 8 C.B.C.2d at 18. The court in *Wanderlich* suggested that the word "vest" as used in section 1327(b) means that upon confirmation, the debtor is lodged with unfettered control as well as possession of then existing property, conditioned upon consummation of the confirmed plan and the case's subsequent closing. The unfettered control is conditional in the sense that conversion would revest the property in a chapter 7 estate. 36 B.R. at 714–15, 11 B.C.D. at 469–70.

Inasmuch as all property in which the debtor has an interest is included in the newly created chapter 7 estate upon conversion, this would suggest that the lienholders should get the benefit of all pre-conversion accretions in the debtor's equity. A case converted to chapter 7 is treated by the code in many respects as a new filing upon conversion. Two of these respects are the factors relied upon by the court in *Dvoroznak* in concluding that the

debtor's equity should be valued as of the date the chapter 7 estate is constituted.

The factors relied upon in *Dvoroznak* were (1) that only the property of the debtor as of the date of filing is included in the debtor's estate; and (2) exemptions are taken as of the filing date. As already demonstrated, with minor exceptions, the chapter 7 estate created upon conversion includes all pre-conversion property of the debtor. As to the second factor, the Eighth Circuit has recently held that upon conversion to a chapter 7, the chapter 7 debtor can claim new exemptions. *Lindberg*, 735 F.2d 1087, 10 C.B.C. 1259–60. The court noted the limited purpose for listing exemptions in chapter 13 cases, and the inequity that chapter 13 debtors who had exchanged exempt property for different exempt property during the pendency of the chapter 13 case would face if not permitted to claim new exemptions upon conversion.[6]

■ Given that conversion of the debtors' chapter 13 case herein created a new chapter 7 estate from which the debtors claimed their exemptions, the analysis relied upon by *Dvoroznak* and the cases cited therein is applicable to a chapter 7 case converted from a chapter 13 case. Therefore, the court concludes that in the case at bar, the date upon which to value the debtors' equity in their homestead for purposes of a lien avoidance in their chapter 7 case is the date that their case was converted to one under chapter 7.

The parties have stipulated that on the date of conversion the value of the debtors' home above their mortgage was sufficient to satisfy their exemption and the liens subject to this proceeding. Consequently, the debtors' exemption is unimpaired and that portion of the debtors' complaint seeking avoidance of the liens of European American Bank and Household Finance Corp. must be dismissed.

So Ordered.

---

**6.** The *Lindberg* court also relied upon the advisory note to Bankruptcy Rule 1019(1) which states that when a debtor in a converted case has not previously prepared a schedule of assets, he must do so as if a chapter 7 petition had been filed *on the date of conversion.* 735 F.2d 1087, 10 C.B.C. at 1259–60.