In re Armon J. HELVIG, Debtor.

**SUN CITY CLINIC OF CHIROPRACTIC, LTD., Movant,**

v.

**Armon J. HELVIG, Debtor, and Robert Vucurevich, Trustee, Respondents.**

**Bankruptcy No. B–86–1559–PHX–SSC. Adv. No. "A".**

United States Bankruptcy Court, D. Arizona.

April 9, 1987.

Michael W. Carmel, Phoenix, Ariz., for Sun City.

Timothy D. Peterson, Phoenix, Ariz., for debtor.

Robert Vucurevich, Phoenix, Ariz., trustee.

## OPINION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

This matter comes before the Court on a Motion for an Order to Show Cause Why Armon Helvig, hereinafter referred to as "Debtor," should not be held in contempt for willfully violating this Court's July 2, 1986, order modifying the automatic stay, filed by Sun City Clinic of Chiropractic, Ltd., hereinafter referred to as "Sun City." This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This Court has authority to grant the relief requested pursuant to 11 U.S.C. § 105(a). *Better Homes of Virginia, Inc. v. Budget Service Company,* 52 B.R. 426 (E.D.Va.1985); *In the Matter of Brock,* 58 B.R. 797 (Bankr.S.D.Ohio 1986); *In re Taylor,* 59 B.R. 197 (Bankr.M.D.La.1986); *In re L.H. & A. Realty, Inc.,* 62 B.R. 910 (Bankr.D.Vt.1986); *In re Shafer,* 63 B.R. 194 (Bankr.D.Kan.1986); *In re Taco Ed's, Inc.,* 63 B.R. 913 (Bankr.N.D.Ohio 1986).

On April 12, 1986, the Debtor filed for relief under Title 11, United States Code, Chapter 7. In his Schedule A–2, the Debtor acknowledged a $70,000 secured debt due and owing Gary Ledoux, the principal of Sun City. In his Schedule B–2, the Debtor listed the value of Sun City's tangible collateral at $20,000. On Schedule B–2(i), the Debtor made an additional notation that the collateral was "secured beyond value," a reference to the fact that the collateral was overencumbered.

On June 24, 1986, Sun City filed a motion for relief from the automatic stay, alleging lack of adequate protection. The subject property of the motion is a going concern, chiropractic practice, including patient records, furniture, fixtures and a leasehold interest in real property. On July 2, 1986, the Debtor, Sun City and the Trustee filed a stipulation for relief from the stay. By order dated July 2, 1986, this Court approved the stipulation.

Concerning this instant matter, the operative portion of the stipulation, paragraph 6, provides that, "The parties further stipulate and agree that Movant (Sun City) shall be entitled to have the immediate ability to operate the Chiropractic Practice as he (Sun City/Gary Ledoux) deems necessary." All parties allegedly agreed at that time that this provision, hereinafter referred to as "paragraph 6," entitled Sun City to retake the chiropractic practice, including repossession of the patient records, furniture, fixtures and real property leasehold interest.

On November 6, 1986, Sun City filed a Motion for Order to Show Cause In re Contempt, alleging that the Debtor willfully violated this Court's July 2, 1986, order modifying the automatic stay, by refusing to allow Sun City to retake the subject property. On November 12, 1986, this Court entered an order to show cause why the Debtor should not be held in contempt for violating the July 2, 1986, order. The Court convened a hearing on this matter on November 19, 1986. At that hearing the parties concluded that an evidentiary hearing would be required to resolve the matter. Pursuant thereto, this Court conducted an evidentiary hearing on January 6, 1987.

Sun City, as seller, and the Debtor, as purchaser, entered into the sale of an ongoing chiropractic practice on or about March 1, 1984. The agreement of sale was introduced into evidence at the time of the hearing before this Court. The agreement provides for the sale of what may almost be termed a "turnkey" operation. "Goodwill and going concern," leasehold improvements, other real property interests, personalty, patients' records, files, even the trade name were transferred from Sun City to the Debtor. Sun City was to use its best efforts to ensure that the patients remained with the practice. Pursuant to the agreement of sale, the parties contemplated that Sun City would send out a letter to its patients, introducing the patients to the Debtor. Sun City would also introduce the Debtor to the patients when the latter parties arrived for treatment. In return for this "turnkey" operation, the Debtor agreed to pay the sum of $115,000 and assume the obligations incurred under the lease agreement concerning the premises where the practice was located. The parties ascribed in the agreement of sale certain values to the property being sold. The agreement provides that "Equipment, leasehold improvements, furniture, supplies, records and lease interests" shall have an *allocated* value of $80,000; goodwill an allocated value of $35,000; and a covenant not to compete, an allocated value of $20,000.

The evidence presented to this Court reflected that the Debtor did not return the "turnkey" operation that was transferred to him. Although Sun City turned over a well-established practice to the Debtor, the Debtor thwarted the efforts of Sun City to receive back an ongoing operation after the stay was vacated. When the Debtor took the stand, he was visibly uncomfortable. He admitted that at the time the stay was vacated, it was contemplated by the parties that the practice would be returned to Sun City. Although the evidence introduced at the time of trial indicated that the Debtor had turned over some records to Sun City, this Court concludes that compliance with the intentions of the parties was minimal and sporadic. Pursuant to the vacatur of stay stipulation and order, and specifically paragraph 6 of the stipulation, Sun City was to have the immediate ability to operate the practice. Without the treatment records, patient files, appointment book, and an orderly transition incorporating a letter to the patients and other procedures, Sun City did not have the immediate ability to operate the practice. Moreover, Sun City's Exhibits No. 3, 4 and 5 were particularly dispositive, in conjunction with the testimony of Sun City's principal and the Debtor, indicating that the Debtor utilized beyond the agreed time period the practice's telephone number, and attempted to retain patients belonging to the practice. Furthermore, the Debtor continued to utilize, after the stay had been vacated, letterhead that misled the patients of the practice. The Debtor admitted at the hearing that the letterhead utilized the same name of the practice except that "Ltd." was no longer incorporated in the name. The contents of the letter forwarded to patients of the practice after the vacatur of the stay also misled the practice's patients into believing that the Debtor had emerged victorious from litigation with relatively few changes and that he was available to treat patients of the practice on an ongoing basis.

However, the evidence adduced at the time of trial did not support Sun City's contention that the Debtor had obstructed or refused to cooperate in the turning over

to Sun City of the leasehold interest at the premises where the practice was located. The lease agreement had expired by its terms at the approximate time that the stay was vacated. Moreover, the landlord at the time had required that a three-year lease agreement be entered into between Sun City and the landlord. During the period of these negotiations, Sun City leased the premises from the landlord on a month-to-month basis. However, the evidence presented reflected that the landlord acted on his own, and not in concert with the Debtor, to prohibit Sun City from obtaining its old location. Simply put, the landlord and Sun City were unable to reach an agreement. No fault may be ascribed to the Debtor.

In reviewing all of the evidence, this Court concludes that the Debtor willfully violated an order of this Court which embodied the agreement of the parties that the chiropractic practice be returned to Sun City.

The issue of damages, however, remains problematical. Dr. Glen Wilt, a private financial consultant, was qualified as an expert by Sun City. He testified on the issue of whether Sun City had been made whole upon return of the practice from the Debtor to Sun City after the stay had been vacated on July 2, 1986. Unfortunately, the issue presented to the expert was too narrow. The expert did state that the goodwill or going concern value of the business had been transferred to the Debtor, but that said asset had not been returned by the Debtor after the stay was vacated. Dr. Wilt stated that the failure of Sun City to receive from the Debtor appointment books, treatment detail, and patient records had a great impact on the ability of Sun City to realize the going concern value of the practice. However, Sun City was unable to prove the amount of the damages suffered by it as a result of the Debtor's failure to transfer the goodwill to Sun City. Although the parties may have allocated a value of $35,000 to the goodwill in the agreement of sale, no credible evidence was presented at the hearing as to the current fair market value of the goodwill or the practice, or even the fair market value of the practice as of June or July, 1986. On cross-examination, Dr. Wilt also conceded that the location of the practice (which was lost as a result of Sun City's actions) was a factor in determining the fair market value of the goodwill or the practice.

With no credible evidence as to the amount of damages sustained, this Court can only provide Sun City with something of a Pyrrhic victory.

After careful review of the pleadings and memoranda filed and the evidence presented, this Court finds and concludes that the Debtor did willfully violate this Court's order dated July 2, 1986. This Court further finds and concludes that Sun City failed to prove that it suffered more than *de minimis* damages as the result of the Debtor's conduct.

For the above-stated reasons:

IT IS ORDERED finding the Debtor in contempt of court for the willful violation of this Court's order dated July 2, 1986.

IT IS FURTHER ORDERED that the Debtor shall fully comply with the July 2, 1986, order of the Court within ten (10) days of the date of this order.

IT IS FURTHER ORDERED that the Debtor shall pay all attorney's fees and costs associated with this instant proceeding.

IT IS FURTHER ORDERED that failure to comply with any provision of this Order shall result in the dismissal of this petition pursuant to 11 U.S.C. § 707(b) and/or entry of an order denying this Debtor a discharge under 11 U.S.C. § 727(a)(6)(A), upon motion of either Sun City or the Trustee.

Pursuant to *Fed.R.Civ.P.* 52, as adopted by Rule 7052 of the *Rules of Bankruptcy Procedure,* this Opinion and Order shall constitute findings of fact and conclusions of law in support of this decision.